# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICOLE T. WORTMAN and SHANE W. WORTMAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES LLC,<br><br>Defendant. | Case No. 1:19-cv-02860<br><br>Hon. Virginia M. Kendall<br><br>Magistrate Hon. Jeffrey Cummings |

## RUSHMORE LOAN MANAGEMENT SERVICES LLC'S RULE 12(b)(6) MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant Rushmore Loan Management Services LLC moves under Rule 12(b)(6) to dismiss the Wortmans' Fair Debt Collection Practices Act (FDCPA) and Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) claims with prejudice.[1]

## INTRODUCTION

The Wortmans assert that Rushmore's monthly mortgage statements are misleading, deceptive, and unfair because Rushmore sent them after the acceleration of the loan and they identify late fees that may accrue if the reinstatement amount is not paid. The Wortmans' position is that after acceleration, late fees cannot permissibly be charged to their account under *any* circumstances. That is incorrect, as the very case law relied on by the Wortmans demonstrates. In fact, the Wortmans' claims fail for three independent reasons detailed below.

---

[1] This is the Wortman's second federal putative class action against Rushmore. Less than a year ago, the Wortmans filed a putative class action generally alleging that Rushmore attempted to personally collect on a discharged debt in violation of the FDCPA (*Nicole T. Wortman et al. v. Rushmore Loan Management Services LLC*, 1:18-cv-04894). Rushmore's motion to dismiss that putative class action remains pending before Judge Tharp Jr.

1

***First***, the Wortmans fail to plead compliance with the notice and cure provision of their mortgage. The notice and cure provision is a critical provision designed to allow parties to resolve disputes before needless litigation such as this. It applies here and supports dismissal.

***Second***, Rushmore's mortgage statements are not communications sent in connection with the collection of a debt. Rather, the mortgage statements are mandated by TILA to provide borrowers like the Wortmans with necessary information about the status of their account. Because Rushmore sent the mortgage statements for informational purposes only, they are not actionable under the FDCPA.

***Third***, Rushmore's mortgage statements are not misleading, deceptive, or unfair because of the inclusion of late fees for failure to pay the reinstatement amount. Post-acceleration late fees are recoverable in the Seventh Circuit upon reinstatement if authorized by the mortgage. The Wortmans' mortgage expressly authorizes post-acceleration late fees. As such, there is nothing misleading, deceptive, or unfair about Rushmore including late fees in its mortgage statements so that the Wortmans know what they must pay to reinstate the loan. The alternative that the Wortmans suggest—excluding late fees from the mortgage statements—would actually be more misleading, deceptive, and unfair because it would provide the Wortmans with an understated reinstatement figure if they decided to reinstate.

Indeed, the Consumer Financial Protection Bureau (CFPB) has itself acknowledged that the inclusion of post-acceleration late fees is proper by creating a mortgage statement template that includes post-acceleration late fees. Rushmore followed that template, and its compliance with the CFPB regulation provides a safe harbor from liability under the FDCPA.

For these reasons and the others detailed herein, Rushmore respectfully requests that this Court dismiss the Wortmans' complaint in its entirety and with prejudice.

# ALLEGATIONS IN THE PLEADINGS[2]

The Wortmans defaulted on a mortgage loan originally obtained from ABN AMRO Mortgage Group, Inc. (D.E. 1, Compl. at ¶¶ 16, 20.) After the Wortmans defaulted, Rushmore acquired the servicing rights for the loan. (*Id.* at ¶ 21.) Rushmore accelerated the loan and thereafter sent the Wortmans monthly mortgage statements. (*Id.* at ¶¶ 22-36[3] and Exs. A-C.) The statements follow the template provided by the CFPB. (*Compare id.* at Exs. A-C *with* 12 C.F.R. § 1026 app. H-30(B).)[4] With respect to late fees, the statements set out the "Reinstatement Amount Due" and immediately beneath that state that "[i]f payment is received after" the 15 day grace period a "late fee will be charged." (D.E. 1, Compl. at Exs. A-C.). The statements separately identify the "acceleration amount"—the full amount due on the loan.

The Wortmans assert that Rushmore cannot include late fees for post-acceleration missed monthly payments in the mortgage statement's reinstatement figure. (*Id.* at ¶¶ 43-48, 53.)[5] The Wortmans assert that Rushmore violated § 1692e of the FDCPA by falsely and deceptively including late fees in the mortgage statements, § 1692f of the FDCPA by attempting to collect late fees that are not authorized by the loan documents or by law, and the ICFA based on the same conduct. (*Id.* at ¶¶ 43-48, 53.)

---

[2] Rushmore accepts the Wortmans' allegations as true for purposes of this motion only.

[3] The Wortmans' complaint contains two paragraphs 33-36. Rushmore will identify the first set of those numbers as "33-36" and the second set as "33(a)-36(a)."

[4] For the Court's convenience, a copy of the applicable template mortgage statement is attached as **Exhibit 1**.

[5] The Wortmans seek to represent four separate Illinois classes of individuals to whom Rushmore mailed statements in the form set out in Exhibits A-C of the complaint after their mortgage loans were accelerated. (D.E. 1, Compl. at ¶ 64.) The class issues are irrelevant at this stage because any class certification issues will be resolved if this Court determines that the Wortmans' individual claims are without merit. *See Doyle v. Prewitt*, 39 Fed. App'x. 344, 348 (7th Cir. 2002) ("Where the district court determines that the plaintiff's claims are without merit, the plaintiff is disqualified as a class representative thus resolving the issue of class certification.") (internal quotations omitted).

**APPLICABLE PLEADING STANDARDS**

A complaint must state a claim that is "plausible on its face" in order to avoid dismissal under Federal Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy that burden, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted). In considering a motion to dismiss, this Court should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [] laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Moreover, in considering a Rule 12(b)(6) motion, "district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim. The freedom includes exhibits attached to the complaint…" *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quotations omitted). "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls… ." *Id.*

**ARGUMENT**

**I.  The Wortmans fail to plead compliance with the notice and cure provision of the mortgage.**

This Court should dismiss the complaint because the Wortmans fail to allege that they provided Rushmore with pre-suit notice and an opportunity to cure as required by the mortgage. The notice and cure provision states, in relevant part:

> Neither Borrower nor Lender may commence … any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged

4

breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Mortg. at § 20, attached hereto as **Exhibit 2**.)[6] Section 15 of the mortgage requires that all notices "must be in writing." (*Id*. at § 15.)

This notice and cure provision serves an important purpose. By requiring the parties to communicate *before* filing a lawsuit, it has the capacity to prevent needless litigation. For instance here, if the Wortmans had informed Rushmore that they believed the mortgage statements were deceptive in their inclusion of post-acceleration late fees, Rushmore could have further explained the circumstances under which late fees would be (lawfully) collected, or otherwise tried to reach a mutually agreeable accommodation. The parties and this Court could have then avoided the time and significant expense associated with this lawsuit.

As recently explained in *Rodriguez v. Rushmore Loan Mgmt. Serv.*, 18-cv-1015, 2019 WL 423375 (Feb. 4, 2019), the notice and cure provision applies to bar the claims asserted by the Wortmans.[7] There, like here, Rodriguez alleged that Rushmore, as loan servicer, violated §§ 1692e and 1692f of the FDCPA by "threatening to impose late fees that [Rushmore] was not legally entitled to impose, since Plaintiff's Mortgage had been accelerated and Plaintiff had not sought to reinstate it." *Rodriguez*, 2019 WL 423375 at *2.

The *Rodriguez* court addressed the notice and cure argument in two parts. It first concluded that the dispute "'ar[ose] from' actions that [Rushmore] purportedly took pursuant to the Mortgage—in particular, adding late fees to the amount that [Rushmore] told Plaintiff would

---

[6] The Court can consider the Wortmans' mortgage without converting this motion to one for summary judgment because the mortgage is referred to in the Wortmans' complaint and is central to their claim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

[7] The notice and cure provision at issue in *Rodriguez* is identical that that at issue here. (*Compare Rodriguez,* 2019 WL 423375 at *3 with Ex. 2 at § 20.)

5

be due if Plaintiff were to bring her mortgage current." *Rodriguez*, 2019 WL 423375 at *3. That holding is consistent with decisions from around the country that have held a "claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'" *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340-41 (11th Cir. 2012); *see also Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017) (claim alleging defendant violated FDCPA by charging inspection fees authorized by security instrument was "judicial action … that *arises from* the other party's actions *pursuant to* [the] Security Instrument") (emphasis in original).

Here, section 1 of the mortgage is titled "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges" and mandates that "[The Wortmans] shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Ex. 2, Mortg. at § 1)). Section 19 of the mortgage requires the Wortmans to pay "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred" in order to reinstate. (*Id.* at § 19). Rushmore's inclusion of post-acceleration late fees in its mortgage statements is authorized by sections 1 and 19 of the mortgage and so the Wortmans' lawsuit challenging those fees "arises from" the mortgage. *Rodriguez*, 2019 WL 423375 at **3-4.

The *Rodriguez* court next concluded that the notice and cure provision applied even though Rushmore was not the defined "Lender" under the mortgage. *Rodriguez*, 2019 WL 423375 at *5. The court noted that "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender" and Rushmore, as loan servicer, was an assignee. *Id.*; *see also Giotta*, 706 F. App'x at 422 (holding that Ocwen was not the defined "Lender," but had been assigned the servicing rights to

the loan and thus could benefit from the notice and cure provision in the mortgage). The same is true here—Rushmore is the acknowledged loan servicer with the power to enforce the notice and cure provision. (*See* D.E. 1, Compl. at ¶ 21 (Rushmore "obtained servicing rights to the Loan after [the Wortmans] defaulted on the Loan.") and Ex. 2, Mortg. at § 13 ("[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.").)

Because Rushmore is the assign of the "Lender" and this lawsuit arises directly from Rushmore's sending of mortgage statements including late fees, the notice and cure provision applies. The Wortmans, however, do not plead that they notified Rushmore (in writing) of Rushmore's allegedly improper mortgage statements and afforded Rushmore a reasonable time to discuss the dispute with the Wortmans or to take corrective action. Courts throughout the country, including in *Rodriguez*, have dismissed similar claims when the plaintiff fails to affirmatively plead compliance with the notice and cure provision in the mortgage. *See Rodriguez*, 2019 WL 423375 at *6 ("the Court concluded that Plaintiff was required to comply with the Mortgage's notice and cure provision prior to filing this suit. Because Plaintiff does not allege that she did so, the Complaint must be dismissed."); *see also Michael v. CitiMortgage, Inc.*, No. 16-CV-07238, 2017 WL 1208487, at *4 (N.D. Ill. Apr. 3, 2017) ("Here, the Court dismisses Plaintiff's claims because she failed to allege compliance with the notice provision in her contract."); *Giotta*, 706 F. App'x at 423 ("Because the Giottas failed to provide pre-suit notice to Ocwen in accordance with the Deed of Trust, the district court properly dismissed the case."); *Johnson v. Countrywide Home Loans, Inc.*, No 1:10cv1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (dismissing statutory claims (including FDCPA claim) for failure to plead compliance with notice and cure provision); *Hill v. Nationstar Mortg., LLC*, No. 15-60106-

71538464v.2

CIV, 2015 WL 4478061, at *3 (S.D. Fla. Jul. 6, 2015) (dismissing RICO, breach of contract, and unjust enrichment claims for failure to plead compliance with notice and cure provision). That same result is mandated here; this Court should dismiss the Wortmans' complaint with prejudice.

## II. Rushmore's statements are informational; they are not communications sent in connection with the collection of a debt and are not actionable under the FDCPA.

Condition precedent aside, to be liable under the FDCPA Rushmore must have sent the mortgage statements "in connection with the collection of any debt" (15 U.S.C. § 1692e) or "to collect or attempt to collect any debt" (15 U.S.C. § 1692f).

The FDCPA does not define the phrase "in connection with the collection of any debt" but the Seventh Circuit has made clear that not all communications sent to borrowers about a debt are "in connection with the collection of any debt." *See Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998). Communications that are informational do not trigger liability. *Id.* In considering whether a communication is a debt-collection communication, this Court is to make a commonsense inquiry into whether the communication demands payment, the nature of the parties' relationship, and the objective purpose and context of the communications. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010).

The context in which Rushmore sent the Wortmans the mortgage statements establishes that the mortgage statements were not sent in connection with the collection of a debt. Rushmore did not send the mortgage statements to pressure the Wortmans to pay the outstanding debt. Rather, Rushmore was *required* to send the mortgage statements by TILA and Regulation Z. 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(a)(2).

In implementing Regulation Z, the CFPB recognized that by requiring servicers to send mortgage statements to borrowers, servicers could potentially run afoul of the FDCPA. Implementation Guidance for Certain Mortgage Servicing Rules, 2013 WL 9001249 (C.F.P.B.

71538464v.2

Oct. 15, 2013) ("Bulletin 2013-12"). To resolve this potential conflict, the CFPB issued Bulletin 2013-12 which advised "that a servicer acting as a debt collector would not be liable under the FDCPA for complying" with Regulation Z and sending periodic mortgage statements despite a borrower's cease communication request. *Id.* The CFPB based this exemption in part on the fact that periodic mortgage statements "provide useful information to consumers regardless of their collections status." *Id.*

Although Bulletin 2013-12 was specifically concerned with the sending of mortgage statements to borrowers who had requested that communications cease, courts have recognized that because the periodic mortgage statements are informational only, no FDCPA liability can attach to the sending of those mortgage statements, cease communication request or not. *See Antoine v. Carrington Mortg. Servs. LLC*, No. 0:17-CV-61216-WPD, 2017 WL 3404389, at *2 (S.D. Fla. Aug. 8, 2017) (dismissing FDCPA claim premised on allegedly deceptive mortgage statements because "the monthly mortgage statement did not constitute 'debt collection' under the FDCPA"); *Brown v. Select Portfolio Servicing, Inc.*, No. 16-62999-CIV, 2017 WL 1157253, *2 (S.D. Fla. Mar. 24, 2017) (citing 12 C.F.R. § 1026.41) ("Defendant is required by federal law, specifically Federal Truth in Lending Act ('TILA') Regulation Z to send mortgage statements to plaintiff. Plaintiff cannot state a claim under the FDCPA with respect to monthly mortgage statements sent pursuant to federal law."); *see also id.* at n. 5 ("If a mortgage servicer is not liable under the FDCPA for sending monthly mortgage statements pursuant to TILA Regulation Z, even after the consumer requested that it cease communications, then there is no basis for imposing FDCPA liability upon a servicer for complying with Regulation Z absent a 'cease communication' notice from the borrower."); *Hill v. DLJ Mortg. Capital, Inc.*, No. 15-CV-3083 (SJF) (AYS), 2016 WL 5818540, at *9 (E.D.N.Y. Oct. 5, 2016) (dismissing FDCPA claim

9

because the servicer "was merely sending plaintiff the periodic mortgage statements that it was required to send to her under the TILA and its implementing regulations … for informational purposes while the amounts due under the Foreclosure Judgment remained unsatisfied pending the sale of the Property; not in connection with an attempt to collect a debt from plaintiff for purposes of the FDCPA.").

Admittedly, courts are not unanimous on this issue. *Matmanivong v. National Creditors Connection, Inc.*, for instance, held that CFPB Bulletin 2013-12 "only exempted mortgage servicers from FDCPA liability when a borrower has instructed the servicer to cease communicating with them." 79 F. Supp. 3d 864, 873 (N.D. Ill. 2015) (internal quotation marks omitted). But that interpretation of CFPB Bulletin 2013-12 treats borrowers who receive the exact same mortgage statement differently depending merely on whether they demanded that communications cease. That disparate treatment alone is problematic, but the logic is also upside down: those borrowers who would normally receive extra protection due to their cease communication demand instead receive none. The more reasonable and equitable interpretation is that because the mortgage statements are informational only, they are not communications sent in connection with the collection of a debt, and are not actionable under the FDCPA, regardless of any cease communication request. *See Hill*, 2016 WL 5818540, at *9 ("The reasoning behind the CFPB's advisory opinion is equally applicable, even where, as here, there is no indication that a 'cease communication' notice was sent by the consumer in default of her mortgage loan...").

Rushmore sent the Wortmans the mortgage statements in question because it was mandated to do so by 12 C.F.R. § 1026.41. The mortgage statements are strictly informational

10

and are thus not actionable under the FDCPA. Rushmore respectfully requests that this Court dismiss the Wortmans' FDCPA claim with prejudice on that additional basis.

**III. Rushmore's mortgage statements do not violate the FDCPA or ICFA because late fees are recoverable upon reinstatement and there is thus nothing deceptive, misleading, or unfair about the mortgage statements**

The Wortmans have an even more fundamental problem—the mortgage statements are plainly not misleading, deceptive, or unfair and thus are not actionable under the FDCPA or ICFA.

**A. Late fees are recoverable upon reinstatement per the terms of the Wortmans' mortgage and applicable Seventh Circuit law.**

The crux of the Wortmans' claims is that the absence of a monthly payment obligation "precludes the imposition of late charges…" (Compl. at ¶ 38.) In support of this position, the Wortmans rely on *Rizzo v. Pierce & Assocs.*, 351 F.3d 791 (7th Cir. 2003).

The Wortmans' reliance on *Rizzo* is odd because *Rizzo* actually supports Rushmore's position. Rizzo, like the Wortmans, claimed that late fees are not recoverable for missed post-acceleration monthly payments, and any effort to collect such late fees violates the FDCPA. *Rizzo*, 351 F.3d at 792-94. The Seventh Circuit expressly rejected that argument. *Id.* at 793. Rizzo's mortgage allowed Rizzo to reinstate if he paid the lender "all sums which would be then due under this Mortgage and the Note had no acceleration occurred." *Id.* The Seventh Circuit found that:

> The effect of this, from the plain language of the instrument, is retroactive. In other words, the monthly payments are deemed to have been due each and every month on the dates set out in the mortgage and note. We find this language to unambiguously require plaintiffs to pay the late fees.

*Id.* at 793-94. And because late fees were recoverable after acceleration per the terms of the loan documents, the Seventh Circuit concluded that:

11

> We cannot find any false or misleading representations nor can we deem the collection of late fees unfair or unconscionable. The terms of the note and mortgage explicitly require payment of all sums which would then be due had no acceleration occurred. We hold that defendants have not violated the FDCPA.

*Id*. at 794.

The Wortmans' mortgage permits the recovery of late fees for missed post-acceleration monthly payments, just like Rizzo's did. (Ex. 2, Mortg. at § 19 ("Borrower's Right to Reinstate After Acceleration…If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued…Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred…")); *see also Rizzo*, 351 F.3d at 793-94. As such, the Wortmans are wrong with respect to the primary legal theory underpinning their complaint—that acceleration precludes the imposition of late fees for missed monthly payments. (D.E. 1, Compl. at ¶ 38.)

### B. Rushmore's inclusion of late fees in the mortgage statements is not misleading, deceptive, or unfair.

Because acceleration does not automatically preclude the recovery of late fees, the only remaining argument for the Wortmans is that Rushmore presents the legally recoverable late fees in a deceptive, misleading, or unfair manner. A cursory review of the mortgage statements establishes that contention to be without merit.

Post-acceleration, the Wortmans had two options: (1) reinstate the loan; or (2) pay off the loan in full. As discussed above, if they reinstated the loan, they would be effectively making all their missed monthly payments and would thus be obligated to pay the late fees associated with those missed monthly payments. *Rizzo*, 351 F.3d at 792-94. If they paid off the loan in full, they would not be required to pay any late fees.

12

Rushmore's mortgage statement delineates both the "reinstatement amount" and the "acceleration amount" but only those amounts; because the loan had been accelerated, the statements do not reference a monthly payment amount. (D.E. 1, Compl. at Exs. A-C.) Below the "reinstatement amount," the statement indicates that a late fee will be added to the reinstatement amount if the reinstatement payment is not received by a certain date. (*Id.*) There is no similar statement or implication regarding the imposition of late fees with respect to the acceleration amount. (*Id.*) In other words, the mortgage statement sets forth that late fees may be added to the reinstatement amount, but not the acceleration amount.

An unsophisticated consumer "isn't a dimwit. She may be uninformed, naïve, [and] trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) (internal quotation marks and citations omitted). There is no plausible way that the Wortmans could read Rushmore's mortgage statement and believe that they were going to be charged late fees absent reinstatement.

It is also worth noting that there is no better alternative. If Rushmore omitted the late fees from the mortgage statements as the Wortmans suggest, the Wortmans could pay the purported reinstatement amount only to then learn that said amount was understated because it did not include the late fees due and owing upon reinstatement. A mortgage statement that prompted the Wortmans to make an insufficient reinstatement payment could plausibly be deemed misleading, deceptive, and unfair, whereas here, because the late fees are included in the mortgage statements, the Wortmans are provided with a more complete and accurate reinstatement amount. If the Wortmans decide to reinstate, they know the proper amount, and if they decide not to reinstate, the inclusion of late fees in the reinstatement amount is harmless to them.

Rushmore has crafted a clear, unambiguous, and fair mortgage statement consistent with Seventh Circuit precedent allowing for the recovery of late fees upon reinstatement. This Court has the authority to dismiss the FDCPA and ICFA claims as a matter of law on that basis, and should exercise that authority. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009) (court may dismiss FDCPA action when communications are "plainly, on their face, … not misleading or deceptive."); *Malibu Media, LLC v. Thal*, Case No. 15 C 11808, 2016 WL 7240764, at *4 (N.D. Ill. Dec. 15, 2016) (court may dismiss ICFA claim when the complained of conduct does not amount to unfair or deceptive conduct); *see also DeLeon v. Beneficial Const. Co.*, 998 F.Supp 859, 866 (N.D. Ill. 1998) (same).

### C. Rushmore's mortgage statements follow the CFPB's template and that provides a safe harbor against the FDCPA and ICFA claims.

Further supporting the conclusion that Rushmore's mortgage statements are not misleading, deceptive, or unfair is the fact that the mortgage statements follow the template provided by the CFPB. As detailed above, TILA and the CFPB (through Regulation Z) mandate that servicers send borrowers mortgage statements on a monthly basis because the CFPB has determined that monthly mortgage statements "provide useful information to consumers regardless of their collections status." Bulletin 2013-12; *see also* 12 C.F.R. § 1026.41(a)(2). To ensure that servicers comply with TILA's requirements and effectuate the CFPB's desire to provide consumers with valuable and relevant information, the CFPB created a template for mortgage statements to be used by servicers. (*See* Ex. 1, 12 C.F.R. § 1026 app. H-30(B)); *see also* 12 C.F.R. § 1026.41(c) ("Proper use of these forms [provided in appendix H-30] complies with … the layout requirements in paragraph (d) of this section.") The mortgage statements that Rushmore sent to the Wortmans follow the template mortgage statement created by the CFPB

14

and made available at Appendix H-30(B). (*Compare* Compl. at Exs. A-C *with* Ex. 1, 12 C.F.R. § 1026 app. H-30(B).)

A servicer cannot be liable under the FDCPA or ICFA for complying with other federal laws or the advisory opinions of the CFPB. *See* 15 U.S.C. § 1692k(e) ("No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [CFPB], notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason."); *Oberg v. Blatt*, No. 14 C 7369, 2015 WL 9478213, at *3 (N.D. Ill. Dec. 29, 2015) ("[Section 1692k(e)] provides that a debt collector that acts in reliance on a CFPB advisory opinion cannot be held liable even if the CFPB advisory opinion is later rescinded or reversed, either by the agency or by judicial decision."); *see also Jackson v. South Holland Dodge, Inc.*, 197 Ill.2d 39, 45-46 (2001) *quoting Lanier v. Assoc. Fin., Inc.*, 114 Ill.2d 1, 17 (1986) (compliance with TILA is a defense to an ICFA claim because ICFA "does not apply to 'actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.'"). Rushmore complied with the CFPB regulation codified at 12 C.F.R. § 1026.41, which should be entitled to even more weight than compliance with a CFPB advisory opinion. Rushmore is thus protected from liability as a matter of law and this Court should dismiss the Wortmans' complaint with prejudice for that additional reason.

## CONCLUSION

For the reasons stated above, Rushmore Loan Management Services LLC respectfully requests entry of an order dismissing the Wortmans' complaint with prejudice under Rule 12(b)(6), and granting such further relief as the Court finds just and appropriate.

DATED:  May 24, 2019                                    Rushmore Loan Management Services LLC

By:      /s/ David F. Standa
   One of Its Attorneys

Ryan M. Holz
*rholz@lockelord.com*
David F. Standa
*dstanda@lockelord.com*
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois  60606
Telephone: 312.443.0700

71538464v.2

## CERTIFICATE OF SERVICE

I, David F. Standa, an attorney, on oath state that on May 24, 2019, a true and correct copy of the preceding Motion to Dismiss and Incorporated Memorandum of Law was filed and served via the Court's ECF System.

                                                           /s/ David F. Standa