**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICOLE T. WORTMAN and SHANE W. WORTMAN, individually, and on behalf of all others similarly situated, | Case No. 1:19-cv-02860 |
| Plaintiffs, | Honorable Virginia M. Kendall |
| v. | Magistrate Judge Jeffrey Cummings |
| RUSHMORE LOAN MANAGEMNT SERVICES, LLC, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

NICOLE T. WORTMAN and SHANE W. WORTMAN ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their undersigned counsel, respond to RUSHMORE LOAN MANAGEMNT SERVICES, LLC's ("Rushmore") Motion to Dismiss pursuant to Fed. Civ. P. 12(b)(6) ("Defendant's Motion") as follows:

**<u>INTRODUCTION</u>**

Defendant's Motion highlights its fundamental misunderstanding of the legal effect of a bankruptcy discharge and the principal purpose of the Bankruptcy Code, which is to provide the honest but unfortunate debtor a fresh start. In an effort to undermine the protections afforded by the Bankruptcy Code, Defendant's Motion effectively asks this Court to ignore the Bankruptcy Code and to enforce provisions of a pre-bankruptcy contract. Such a result would not only be

inequitable, but would also devour the vital protections afforded to debtors seeking a fresh start, thus rendering the bankruptcy process obsolete.

Defendant's Motion also highlights its miscomprehension of the prohibitions set forth by the Fair Debt Collection Practices Act ("FDCPA") and the mandates of the Truth in Lending Act ("TILA"). Defendant's assault on Plaintiffs' FDCPA claims ignores the adage that if it looks, walks, and sounds like a duck, it is probably a duck. Moreover, Defendant's erroneous interpretation of the mandates of TILA is refuted by the express language of the statute.

Lastly, Defendant's Motion ignores binding Seventh Circuit precedent pertaining to the collection of late fees after a mortgage loan has been accelerated. Unfortunately for Defendant, the Seventh Circuit has held that the assessment of late fees after acceleration is unlawful (absent reinstatement, which is inapplicable here). For the reasons stated below, Defendant's Motion must be denied in its entirety as a matter of law.

## BACKGROUND

On March 3, 2006, Plaintiffs obtained a mortgage loan from ABN AMRO Mortgage Group, Inc. in the amount of $279,000.00 ("subject loan" or "subject debt") to fund the purchase of their principal residence located at 24633 Lincolnway Street, Plainfield, Illinois 60544 ("subject property"). (Amend. Complt. ¶¶16-18.) After the origination of the subject loan, it was assigned and/or transferred multiple times. (Complt. ¶¶19-20.) In 2016, Plaintiffs defaulted on the subject loan. (Amend. Complt. ¶21.) At the time of default, Bank of America was servicing the subject loan. (Amend. Complt. ¶¶20-21.)

On November 30, 2016, Plaintiffs filed a Chapter 13 bankruptcy case in the Northern District of Illinois. (Amend. Complt. ¶22.) Plaintiffs appropriately listed the subject debt on their bankruptcy schedules as a secured debt in the amount of $274,171.00 owed to Bank of America.

2

(Amend. Complt. ¶¶23-24.) Plaintiffs filed a Chapter 13 Plan that proposed to surrender the subject property to Bank of America in full satisfaction of its claims. (Amend. Complt. ¶26.) Bank of America did not object to Plaintiffs' Chapter 13 Plan and the Chapter 13 Plan was subsequently confirmed by the Bankruptcy Court on January 20, 2017. (Amend. Complt. ¶¶27-28.)

Plaintiffs performed all their obligations as set forth by their confirmed Chapter 13 Plan. (Amend. Complt. ¶29.) Accordingly, the Bankruptcy Court granted Plaintiffs a discharge on September 11, 2017 pursuant to section 1328(a) of the United States Bankruptcy Code. (Amend. Complt. ¶30.) Plaintiffs' bankruptcy discharge extinguished Plaintiffs' obligations and personal liability on the subject loan and mortgage. (Amend. Complt. ¶31.) Moreover, Plaintiffs' bankruptcy discharge invoked the protections of the Bankruptcy Discharge Injunction. *See* 11 U.S.C. §524.

At some point after Plaintiffs' bankruptcy discharge, Defendant obtained servicing rights to the subject loan. (Amend. Complt. ¶33.) The subject loan was in default at the time Defendant obtained servicing rights to the subject loan. (Amend. Complt. ¶34.) On April 16, 2018, Defendant sent Plaintiffs a Notice of Intent to Foreclosure, which provided in pertinent part:

> "You are hereby formally notified that the mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.
>
> ***
> This letter is a formal demand to pay $47,644.29. If the default together with additional payments that subsequently become due, is not cured by May 21, 2018, Rushmore Loan Management Services LLC will take steps to terminate your ownership in the property by a foreclosure by judicial proceeding and sale of the property.

On June 20, 2018, after the subject loan was accelerated, Defendant initiated mortgage foreclosure proceedings against Plaintiffs and the subject property. (Amend. Complt. ¶38.) On July 11, August 10, and October 16 of 2018, Defendants sent Plaintiffs mortgage statements. (Amend. Complt. ¶¶39-47, Exhibits A-C). The mortgage statements indicated that Defendant assessed three separate

late charges of $88.35 to the subject loan on June 18, July 16, and August 16 respectively. (*Id.*) All the aforementioned mortgage statements contained the following language:

> "Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose."

Plaintiffs brought individual and class claims against Defendant for violations of the FDCPA and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Plaintiffs allege that Defendant violated the FDCPA §§1692e(2), e(5), e(10), and f(1) and ICFA by threatening and assessing late charges to Plaintiffs' mortgage loan after it was accelerated. Specifically, Plaintiffs contend that the absence of a monthly payment obligation after acceleration and before reinstatement precludes the imposition of late charges for that period, thus rendering any threats and imposition of late fees to be false, deceptive, and unauthorized by contract and law.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997).

## ARGUMENT

**I.     The Notice and Cure Provision is Unenforceable**

Defendant contends that Plaintiffs' claims must be dismissed because Plaintiffs failed to provide Defendant with pre-suit notice and an opportunity to cure as required by the notice and cure provision in the mortgage. Plaintiffs do not dispute that they did not provide Defendant with pre-suit notice. However, Plaintiffs' failure to do is not fatal to their claims because the notice and cure provision is not enforceable by virtue of Plaintiffs' bankruptcy discharge. Simply put, all of Plaintiffs' obligations as set forth by the provisions in the underlying loan and mortgage were extinguished by virtue of Plaintiffs' bankruptcy discharge. To require Plaintiffs to fulfill their contractual obligations on a debt that was discharged in bankruptcy would effectively render the bankruptcy discharge obsolete and would significantly frustrate "the principal purpose of the Bankruptcy Code," which is "to grant a 'fresh start' to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367 (2007).

Here, Defendant is effectively asking the Court to bind Plaintiffs to a provision of a discharged debt. Such a result would be grossly inequitable and would render Plaintiffs' bankruptcy discharge obsolete. Just as Plaintiffs' personal liability on the subject debt was discharged through the bankruptcy, so was the notice and cure provision. It would be absurd for a bankruptcy discharge to extinguish some of Plaintiffs' obligations on a discharged debt while keeping others intact. Courts have recognized this absurd result and have refused to enforce notice and cure provisions after a bankruptcy discharge. Specifically, in *Lilly v. Bayview Loan Servicing, LLC,* 2017 U.S. Dist. LEXIS 164237, at *14 (M.D. Fla. 2017), the plaintiff brought FDCPA claims against his mortgage company for attempting to collect on a discharged debt. *Id.* at *1. The mortgage company, as here, brought a motion to dismiss based on the plaintiff's failure to comply

5

with the notice and cure provision in the mortgage. *Id.* at *3. The *Lilly* court declined to enforce the notice and cure provision and held that the plaintiff is not bound by provisions of a discharged debt. *Id.* at *14. Similarly, courts in this district have refused to enforce provisions of discharged debt. In *Jersntad v. Green Tree Servicing, Inc.,* 2012 U.S. Dist. LEXIS 108988 (N.D. Ill. 2012) (J. Norgle), the plaintiffs brought FDCPA claims against their mortgage company for placing collection calls to plaintiffs in an attempt to collect a discharged debt. *Id.* at *3. The defendant in *Jernstad* moved to compel arbitration pursuant to a pre-bankruptcy arbitration agreement. *Id.* at *4. The *Jernstad* court, recognizing the importance of providing bankruptcy debtors a fresh start, declined to compel arbitration and ultimately found that plaintiffs' "bankruptcy discharge rendered the parties' Arbitration Agreement unenforceable." *Id.* at *6. The sound reasoning in *Jernstad* was adopted by the court in *Harrier v. Verizon Wireless Pers. Communs. LP,* 2012 U.S. Dist. LEXIS 120419, at *2-3 (M.D. Fla. 2012). In *Harrier,* the court declined to enforce a pre-bankruptcy arbitration provision and held that all pre-bankruptcy agreements between the parties were "completely discharged and invalidated." *Id.* at *3. Accordingly, this Court should follow the reasoning in *Lilly, Jernstad,* and *Harrier* and hold that Plaintiffs' bankruptcy discharge invalidated the pre-bankruptcy notice and cure provision.

Defendant's Motion heavily relies on *Rodriguez v. Rushmore Loan Mgmt. Serv.,* 2019 U.S. Dist. LEXIS 17202 (N.D. Ill. 2019) to support the contention that Plaintiffs' failure to comply with the notice and cure provision bars Plaintiffs' claims. Defendant's reliance must fail because *Rodriguez* is easily distinguishable. Specifically, the mortgage loan in *Rodriguez* was not discharged in bankruptcy as the subject loan in this case. *Id.* at *3 (noting that "Plaintiff is not in bankruptcy and has not received a bankruptcy discharge.) As stated *supra*, Plaintiffs' bankruptcy

discharge invalidated the notice and cure provision. Accordingly, *Rodriguez* is distinguishable and thus Defendant's reliance on it misses the mark.

## II. The Notice and Cure Provision Does Not Apply to Plaintiffs' Claims

Assuming that the notice and cure provision was not invalidated by Plaintiffs' bankruptcy discharge, Plaintiffs' claims are still not barred because the notice and cure provision does not apply to Plaintiffs' claims. Specifically, Plaintiffs' claims are not predicated on a violation of the mortgage, but rather on violations of federal and state laws. In other words, Plaintiffs' claims do not arise from Defendant's failure to perform an obligation required of it under the mortgage. Courts have held that "[w]hen claims arise from actions taken pursuant to the contract or agreement at issue, a valid notice and cure provision is a precondition to the suit. However, when a party's cause is based on a violation of federal law, rather than the contract or agreement, courts have held that the notice and cure provision does not apply." *Rivera v. Select Portfolio Servicing, Inc.,* 2017 U.S. Dist. LEXIS 202880, at *6 (D. N.J. 2017) (internal citations omitted) (finding that a notice and cure provision did not bar plaintiff's FDCPA claims because "plaintiff's causes of action are not predicated on any purported violation of the mortgage…").

Similarly, other courts have held that the notice of cure provision does not apply to claims arising from alleged violations of consumer protection statutes. *See Foster v. Green Tree Servicing, LLC,* 2017 U.S. Dist. LEXIS 182740, at *7-8 (M.D. Fla. 2017) (holding that although plaintiffs' claims are related to the mortgage, the notice and cure provision is inapplicable because the claims arise from alleged violations of consumer protection statutes and not from any alleged breach of the mortgage contract); *Colon v. Nationstar Mortg., LLC,* 2015 U.S. Dist. LEXIS 158874, at *5 (S.D. Fla. 2015) ("Nevertheless, even if the notice and cure provision is connected to the mortgage referenced in the Complaint, it cannot be stretched to ensnare pre-suit conduct

concerning a consumer protection statute that is not directly connected to the performance of the duties in the Mortgage."); *Belcher v. Ocwen Loan Servicing, LLC,* 2016 U.S. Dist. LEXIS 173271, at *11 (M.D. Fla. 2016) (finding the notice and cure provision inapplicable because plaintiff has statutory rights under federal and state law that are independent from the requirement under the mortgage agreement to give pre-suit notice).

Here, enforcing the notice and cure provision to bar Plaintiffs' claims would devour the protections provided to Plaintiffs by the FDCPA and ICFA. Courts in this district have acknowledged this deprivation and have declined to enforce notice and cure provisions that devour consumer protection statutes. *See Abercrombie v. Wells Fargo Bank, N.A.,* 417 F. Supp. 2d 1006, 1008 (N.D. Ill. 2006) (J. Kennelly) (holding that the enforcement of the notice and cure provision "would utterly defeat" the purpose of a consumer protection statute.) Simply put, the enforcement of notice and cure provisions such as the one here would render consumer protection statutes obsolete as mortgage companies could simply contract around federal and state consumer protection statutes. Such a result would be against public policy as it would leave consumers powerless against entities that the consumer protection statutes strive to regulate. Accordingly, this Court should find that the notice and cure provision does not apply to Plaintiffs' claims.

### III. TILA Does Not Require Defendant to Issue Mortgage Statements on Discharged Debt; Defendant's Mortgage Statements Were in Connection with the Collection of a Debt

Defendant next argues that its mortgage statements were not communications in connection with the collection of a debt because Defendant was required to send the mortgage statements by TILA and Regulation Z. Unfortunately for Defendant, the relevant TILA provision requiring mortgage statements does not apply to mortgage debt that was (1) discharged in bankruptcy or (2) surrendered in bankruptcy by the consumer. Specifically, 12 C.F.R. §§1026.41(e)(5)(i)(A) and

(e)(5)(i)(B)(2) expressly exempt mortgage servicers from the requirements of sending mortgage statements if (1) the consumer on the mortgage loan "has discharged [their] personal liability for the mortgage loan" in bankruptcy or (2) "the consumer's bankruptcy plan provides that the consumer will surrender the dwelling securing the mortgage loan…" *Id.*

Here, it is undisputed that (1) Plaintiffs' personal liability on the mortgage loan was discharged in bankruptcy, and (2) Plaintiffs' bankruptcy plan provided for the surrender of the property securing the mortgage loan. (Amend. Complt. ¶¶26-28, 30-31.) Moreover, and consistent with the statute, the Bureau of Consumer Financial Protection's Official Comments supplementing 12 C.F.R. §1026, states that "[t]he periodic statement *is not required for any portion of the mortgage debt that is discharged* under applicable provisions of the U.S. Bankruptcy Code." 12 C.F.R. §1026.41, Supp. I, Part 3, Comment 41(e)(5) (emphasis added). Accordingly, the express language of TILA and its supplemental authority refute Defendant's contention that the mortgage statements were required by the statute. *See McNamee v. Nationstar Mortg. LLC,* 2014 Bankr. LEXIS 5412, at *35-38 (Bankr. S.D. Ohio 2014) *citing* 12 C.F.R. §1026.41, Supp. I, Part 3, Comment 41(e)(5) ("The court concludes that 12 C.F.R. §1026.41 does not require [lender] to send post-discharge mortgage loan statements that continue to request payment on a discharged debt.) Notably, all the authority cited by Defendant to support its position that the mortgage statements were required by TILA does not involve mortgage debt that was discharged in bankruptcy, presumably because no such authority exists as the express language of 12 C.F.R. §1026.41 does not require lenders to send mortgage statements for discharged mortgage debt.

Moreover, courts in this District, including this one, have repeatedly held that TILA does not shield lenders from liability under the FDCPA for sending communications that a consumer could interpret as demanding payment of a discharged debt. *See Price v. Seterus,* 2016 U.S. Dist.

LEXIS 48028, at *13-15 (N.D. Ill. 2016) (J. Kendall) (finding that federal law does not require lenders to send post-discharge letters that may be construed as attempts to collect discharged debt); *Azari v. Seterus, Inc.,* 2016 U.S. Dist. LEXIS 143139, at *7-9 (N.D. Ill. 2016) (J. Darrah) (finding that TILA does not require a lender to make a demand for payment after a bankruptcy discharge; denying lender's motion to dismiss consumer's FDCPA claim); *Murray v. Fay Servicing, LLC*, 17-cv-05431, Dkt. 35, at pg. 4 (N.D. Ill. 2018) (J. Bucklo) (rejecting lender's contention that TILA requires it to send post-discharge mortgage statements that demand payment on discharged debt). Based on the foregoing, Defendant's argument that it had a legal obligation under TILA to send the mortgage statements must fail as a matter of law.

In light of the fact that TILA does not require Defendant to send mortgage statements on discharged debt, the mortgage statements were clearly in connection with the collection of a debt. Specifically, the mortgage statements expressly stated "Rushmore Loan Management Services, LLC is Debt Collector, *who is attempting to collect a debt*." (Amend. Compl., Exhibits A-C, pg. 1) (emphasis added). Moreover, the mortgage statements contained (a) an amount due; (b) a payment due date; and (c) threatened late fees. Realizing that the face of the mortgage statements support the conclusion that that they are in connection with a collection of a debt, Defendant, in a footnote, seems to argue that the mortgage statements are benign because they contain language that the mortgage statements are for informational purposes in the event Plaintiffs filed bankruptcy. (Def. Mot. pg. 8). Unfortunately for Defendant, courts in this District, including this one on multiple occasions, have found that despite bankruptcy disclaimer language contained in post-discharge communications, a reference to a specific amount due supports a finding that the communication's purpose is to collect a debt. *Price,* 2016 U.S. Dist. LEXIS 48028, at *11-13 (J. Kendall) (despite bankruptcy disclaimer language, reference to a specific amount due and when

10

such an amount would be due support a finding that communication was meant to collect a debt); *Massey v. Bayview Loan Servicing, LLC*, No. 16-cv-4491, Dkt. 26, pgs. 3-5 (N.D. Ill. 2016) (J. Kendall) (despite bankruptcy disclaimer language, references to specific amounts owed, the parties' debtor-debtee relationship, and the context of the letter, support a finding that the communications could plausibly have been meant to collect a debt); *Tate v. Ocwen Loan Servicing, LLC,* No. 14-cv-05528, Dtk. 20 (N.D. Ill. 2015) (J. Bucklo) (bankruptcy disclaimer insufficient to negate the overall meaning of the letter); *Radney v. Bayview Loan Servicing, LLC,* 2016 U.S. Dist. LEXIS 84877, at *9-10 (N.D. Ill. 2016) (J. Darrah) (despite bankruptcy disclaimer, post-discharge communications could be construed as attempts to collect a debt); *Freeman v. Ocwen Loan Servicing, LLC,* 2016 U.S. LEXIS 82751, at *15-16 (N.D. Ill. 2016) (J. Gottschall) (declining to find, at the pleading stage, that post-discharge communications were informational and not made in connection with the collection of a debt); *Gagnon v. JPMorgan Chase Bank, N.A.,* 2017 U.S. Dist. LEXIS 374, at *13-17 (N.D. Ill. 2017) (J. Dow) (written communication that included bankruptcy disclaimer language could be construed as attempt to collect a discharged debt); *Azari,* 2016 U.S. Dist. LEXIS 143139, at *5-7 (J. Darrah) (finding bankruptcy disclaimer language did not shield creditor from the prohibitions of the FDCPA.) In light of the overwhelming authority and this Court's own rulings on the precise legal issue, this Court should find that Defendant's mortgage statements were in connection with the collection of a debt.

### IV. Late Fees Can Only Be Assessed Upon Reinstatement; Defendant Cannot Assess Late Fees Absent Reinstatement

Defendant correctly contends that late fees can be assessed after acceleration and *upon reinstatement of a loan*. However, late fees could not be assessed on Plaintiffs' loan because they never sought to reinstate the loan. Here, Defendant does not and cannot argue that Plaintiffs sought

to reinstate the loan. As demonstrated by Plaintiffs' confirmed bankruptcy plan, Plaintiffs elected to surrender the subject property to Bank of America in full satisfaction of its claims. (Amend. Complt. ¶¶26-28.) Simply put, Plaintiffs wanted nothing to do with the subject property and never sought to reinstate the loan. The Seventh Circuit in *Rizzo v. Pierce & Assocs.,* 351 F.3d 791, 793-794 (7th Cir. 2003) addressed the issue of whether late charges can be assessed after acceleration and held that late charges can only be assessed *if the borrower reinstates the loan*. *Id.* (emphasis added). Notably, unlike here, the borrowers in *Rizzo* did reinstate the loan. *Id.* at 794. The Seventh Circuit highlighted the distinction as follows:

> It is undisputed that the Rizzos did not make a certain number of monthly payments. Because of this failure, foreclosure was sought. In order to avoid foreclosure, *the Rizzos reinstated the mortgage*. In so doing, plaintiffs had to "pay all sums which would be then due under this Mortgage and the Note had no acceleration occurred." Plaintiffs repeatedly argue "if late charges are tied to overdue 'monthly payments,' the absence of any 'monthly payment' obligation after acceleration and before reinstatement precludes the imposition of late charges for that period." This argument is flawed in that it claims there is an absence of an obligation to make monthly payments after acceleration. *While this may be the case when the borrower does not seek to reinstate, it is not the case here*." *Id.* at 794. (emphasis added).

As demonstrated by *Rizzo,* Defendant cannot assess late charges after acceleration and absent reinstatement, precisely what Defendant did here. Specifically, Defendant's mortgage statements each indicated that a late charge of $88.35 was actually assessed on the loan as follows:

| Transaction Activity (01/01/2018 to 07/11/2018) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Description | Principal | Interest | Escrow | Late Charge | Other | Total |
| 06/18 | LATE CHARGE ASSESS | | | | 88.35 | | |

(Amend. Cmplt., Exhibit A, pg. 3)

| Transaction Activity (02/01/2018 to 08/10/2018) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Description | Principal | Interest | Escrow | Late Charge | Other | Total |
| 07/16 | LATE CHARGE ASSESS | | | | 88.35 | | |

(Amend. Cmplt., Exhibit B, pg. 3)

| Transaction Activity (04/01/2018 to 10/16/2018) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Description | Principal | Interest | Escrow | Late Charge | Other | Total |
| 08/16 | LATE CHARGE ASSESS | | | | 88.35 | | |

(Amend. Cmplt. Exhibit C, pg. 3)

As demonstrated by the face of the mortgage statements, Defendant assessed three separate late charges despite the fact that Plaintiffs never sought reinstatement. Such charges are not authorized by the underlying contract or law. As noted in *Rizzo,* many courts have uniformly held that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated." *Rizzo,* 351 F.3d at 793. Accordingly, this Court must follow binding precedent in *Rizzo* and similarly hold that late charges cannot be assessed after acceleration and absent reinstatement.

### V.      Defendant's Mortgage Statements Were Misleading, Deceptive, and Unfair

Defendant next argues that nothing about the mortgage statements was misleading, deceptive, and unfair. Defendant's argument is without merit. Specifically, §1692f(1) of the FDCPA expressly provides that "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is unfair and unconscionable, and is a violation the Act.  15 U.S.C. §1692f(1). As stated *supra*, the assessment of the late fees was not authorized by the underlying mortgage contract or law. Accordingly, the assessment of the late fees violates the FDCPA as a matter of law.

Moreover, Defendant's argument that the mortgage statements were not false and deceptive under §1692e must fail as well. Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means with the collection of any debt." 15 U.S.C. §1692e. In determining whether a collection letter violates the FDCPA, the letter

13

must be viewed through the eyes of the "unsophisticated consumer." *Wahl v. Midland Credit Mgmt.,* 556 F.3d 643, 645 (7th Cir. 2009). "While the unsophisticated debtor is considered 'uninformed, naive, or trusting,' he is nonetheless deemed to possess 'rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.'" *Durkin v. Equifax Check Servs*., 406 F.3d 410, 414 (7th Cir. 2005) (internal quotations omitted). The "test for determining whether a debt collector violated §1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Wahl,* 556 F.3d at 646.

Here, the mortgage statements were deceptive, false, and misleading because they created the impression that Plaintiffs are subject to late fees even if they do not reinstate the loan. Nowhere in the mortgage statements does it state that the late fees are applicable only if the reinstatement is sought. Accordingly, it leads the reader to believe that late charges will be assessed regardless of whether reinstatement is effectuated. In any event, it would be inappropriate for the Court to dismiss Plaintiffs' claims at this stage of the litigation because "the rule in the Seventh Circuit [is] that the unsophisticated consumer standard is generally a fact issue that cannot be decided at the pleading stage." *Janetos v. Fulton Friedman & Gullace, LLP*, 2013 U.S. Dist. LEXIS 29655, at *17 (N.D. Ill. 2013) (reversed on unrelated grounds) *citing Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). Specifically, the Seventh Circuit in *Walker* held that a "complaint alleging that a particular notice confuses recipients may not be dismissed under Fed.R.Civ.P. 12(b)(6)—not only because 'this notice is confusing' states a claim on which relief may be granted, but also because district judges are not good proxies for the 'unsophisticated consumers' whose interests the statute protects." *Id.* at 501; *see also McMillan v. Collection Prof'l Inc.,* 455 F.3d 754, 759 (7th Cir. 2006) ("We have cautioned that a district court must tread carefully before holding

that a letter is not confusing as a matter of law when ruling on Rule 12(b)(6) motion" in an FDCPA case).  Accordingly, Defendant's attempt to dispose of Plaintiff's FDCPA claims at the pleading stage must fail in accordance with the mandates of the Seventh Circuit.

## VI.     The CFPB's Template is Inapplicable to Discharged Debt

In its last effort to dispose Plaintiffs' claims, Defendant contends that the mortgage statements follow the template provided by the CFPB. Specifically, Defendant, citing 12 C.F.R. §1026.41, argues that "TILA and the CFPB (through Regulation Z) mandate that servicers send borrowers mortgage statements on a monthly basis because the CFPB has determined that monthly mortgage statements 'provide useful information to consumers regardless of the collection status.'" (Def. Mot. pg. 14). Defendant's argument fails for the same reasons set forth in Section III of this brief.  Simply put, TILA and the CFPB's Official Comments on TILA do not require that mortgage statements be sent for discharged debt. Moreover, Defendant's reliance on the CFPB form must fail because the CFPB Official Comments did not require Defendant to charge late fees that are not authorized by contract or law. Lastly, assuming that the CFPB form required the unauthorized assessment of late fees, any CFPB interpretations or forms are not binding on this Court. *See Collopy v. Dynamic Recovery Solutions, LLC.,* 2017 U.S. Dist. LEXIS 51606, at *7 (N.D. Ill. 2017) *citing Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference."); *see also Madinya v. Portfolio Recovery Assocs., LLC,* 2018 U.S. Dist. LEXIS 160501, at *14-15 (S.D. Fla. 2018) (rejecting CFPB safe harbor argument as non-binding). Accordingly, Defendant's reliance on the CFPB's form must fail.

**CONCLUSION**

For the reasons stated above, Defendant's Motion should be denied in its entirety as a matter of law.

Dated: August 16, 2019                          Respectfully Submitted,


                                                /s/ Mohammed O. Badwan
                                                Mohammed O. Badwan, Esq.
                                                Joseph S. Davidson, Esq.
                                                *Counsel for Plaintiffs*
                                                Sulaiman Law Group, Ltd.
                                                2500 S. Highland Ave., Ste.
                                                200 Lombard, IL 60148
                                                Phone (630)575-8180
                                                mbadwan@sulaimanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Mohammed O. Badwan, an attorney, certify that on August 16, 2019, I caused the foregoing to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.


<u>/s/ Mohammed O. Badwan</u>